UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL NORTHERN RESEARCH, LLC,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ZTE CORPORATION, et. al,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 18cv1786-CAB(BLM)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER PREVENTING PLAINTIFF FROM USING DR. VIJAY MADISETTI AS AN EXPERT**<br><br>**[ECF No. 59, 63, 65]** |

On February 8, 2019, Defendants ZTE Corporation, ZTE (USA), Inc., and ZTE (TX), Inc. (collectively "ZTE") filed a motion for protective order preventing Plaintiff Bell Northern Research, LLC ("BNR") from using Dr. Vijay Madisetti as its proposed expert.[1]  ECF No. 59.  On February 11, 2019, the Court issued a briefing schedule.  ECF No. 62.  On February 22, 2019, BNR timely filed its opposition in response to ZTEs' motion and on March 1, 2019, ZTE timely filed their reply to BNR's opposition.  See ECF Nos. 63, 65.  For the reasons set forth below, ZTEs' motion for protective order to exclude Dr. Vijay Madisetti from serving as an expert for BNR is **GRANTED**.

---

[1] ZTE filed their motion pursuant to the parties' joint protective order, which was accepted by the Court (with modifications) on December 5, 2018.  See ECF Nos. 54, 55.

1

# BACKGROUND

On July 26, 2011, a group of plaintiffs ("InterDigital") filed suit in the District of Delaware against ZTE and other defendants for patent infringement, in a case titled <u>InterDigital Communications, LLC v. Huawei Technologies Co., Ltd., et al.</u>, Case No. 1:11-cv-00654 (<u>InterDigital District Litigation</u>). ECF No. 63 ("Oppo.") at 5; <u>see also</u> ECF No. 59-1 ("Motion") at 3. The following eight patents were implicated in the <u>InterDigital District Litigation</u>: U.S. Patent Nos. 7,349,540; 7,502,406; 7,536,013; 7,616,970; 7,706,332; 7,706,830; 7,970,127; and 8,009,636. Oppo. at 6, Ex. 1, Ex. 2.

On August 25, 2011, an investigation of the patents described above was initiated by the International Trade Commission ("ITC"), Investigation No. 337-TA-800 ("<u>InterDigital ITC Investigation</u>"), and on October 11, 2011, the <u>InterDigital District Litigation</u> was stayed pursuant to the <u>InterDigital ITC Investigation</u> and 28 U.S.C. § 1659. <u>See id.</u> at 6, Ex. 20, Ex. 3. On June 28, 2013, the Administrative Law Judge ("ALJ") issued his decision regarding the ITC investigation, finding no infringement by ZTE, and that the asserted claims in three of the patents were "invalid as prior art." <u>Id.</u> at 6–7, Ex. 21. The ITC affirmed these ALJ findings (with certain modifications that are irrelevant to the instant dispute). <u>Id.</u> at 6, Ex. 22. InterDigital appealed the decision and on February 18, 2015, the Federal Circuit affirmed the ITC's findings. <u>See</u> <u>InterDigital Communications, Inc. v. United States Int'l Trade Commission</u>, 601 Fed. App'x 972, 973 (Fed. Cir. 2015). The <u>InterDigital District Litigation</u>, the <u>InterDigital ITC Investigation</u>, and the Federal Circuit litigation surrounding <u>InterDigital Communications, Inc. v. United States Int'l Trade Commission</u> will be referred to collectively as the "<u>InterDigital Matters</u>."

Meanwhile, on March 29, 2012, ZTE and Dr. Madisetti entered into a Consulting Agreement, "under which Dr. Madisetti agreed to provide consulting services to counsel for ZTE" related to various matters, including the <u>InterDigital District Litigation</u> and the <u>InterDigital ITC Investigation</u>. Motion at 3, Ex. B; <u>see also</u> ECF No. 59-2, Declaration of Charles M. McMahon ("McMahon Decl.") at 2. Section 2 of the Consulting Agreement governs the term and states that the Agreement remains effective until:

> (i) two (2) years from the effective date, (ii) one (1) year from the completion of any work performed under this Agreement, or (iii) one (1) year from the completion of the InterDigital Litigation and any other litigation or licensing negotiations between CLIENTS [including ZTE] and InterDigital commenced prior to the expiration or termination of this Agreement, whichever is longest, unless terminated or extended.

Motion at Ex. B. Section 8 of the Consulting Agreement governs Confidential Information and initially states that the obligations described therein "shall survive the expiration or termination" of the Agreement. Id. Section 8(a) states that Dr. Madisetti is obligated to "maintain confidential and secret all information disclosed to [him] by COUNSEL or CLIENTS [including ZTE], that is or may be confidential or secret in character, and all information developed by CONSULTANT in performance hereunder (collectively "Confidential Information"), and CONSULTANT shall not disclose this Confidential Information[2] to any other person . . . , firm, or corporation." Id. Section 8(d) states that Dr. Madisetti "agrees not to consult for or work for parties in matters where any CLIENT [including ZTE] is an adverse party." Motion at Ex. B. Section 8(e) further states that Dr. Madisetti "agrees not to consult for any entity, other than CLIENTS [including ZTE], regarding any of CLIENTS' products at issue in the InterDigital Litigation during the term of this [Consulting] Agreement." Id.

Moving to the instant litigation, on August 1, 2018, BNR filed a complaint against ZTE, giving rise to the current matter. ECF No. 1. BNR alleges that forty-seven[3] ZTE products infringe

---

[2] Pursuant to the Consulting Agreement, "[c]onfidential [i]nformation includes, but is not limited to, (1) the 'know-how', strategies, analysis, and plans of COUNSEL and CLIENTS relating in any way to the fields of endeavor in which CONSULTANT performs investigations, (2) evaluations and services for COUNSEL or CLIENTS, (3) any work projects to which CONSULTANT is exposed, including the identify of persons working such projects, (4) the existence of this Agreement, (5) the nature or substance of any relationship(s), consulting services, and/or work (if such relationship(s), services, and/or work relates to this Agreement) with or for any of the parties to this Agreement, and (6) any of the provisions of this Agreement." Motion at Ex. B.

[3] BNR's complaint listed forty-four ZTE products that allegedly infringed BNR's patents but did not limit the products to those listed in the complaint. See generally ECF No. 1. Based on BNR's patent disclosures of asserted claims and infringement contentions, BNR is alleging that the following ZTE products infringe on various BNR patents (which differ somewhat from the original

on the following eight U.S. Patents: (1) Patent No. 7,319,889; (2) Patent No. 8,204,554; (3) Patent No. 7,990,842; (4) Patent No. 8,416,862; (5) Patent No. 6,941,156; (6) Patent No. 8,792,432; (7) Patent No. 7,957,450; and (8) Patent No. 7,039,435.  Id. at 31, 34, 37, 40, 44, 47; Motion at Ex. K.  On November 30, 2018, the parties filed a joint motion for protective order governing discovery, which the Court granted with modifications on December 5, 2018.  ECF Nos. 54, 55.  BNR filed a notice of related cases on January 2, 2019 and on February 5, 2019, BNR filed an unopposed motion to consolidate several cases.  ECF Nos. 57, 58.  On February 8, 2019, District Judge Cathy A. Bencivengo granted BNR's motion and consolidated those cases[4] for pre-trial purposes.  ECF No. 60.  ZTE now seeks a protective order excluding Dr. Madisetti as BNR's expert based on the Consulting Agreement between ZTE and Dr. Madisetti, as well Dr. Madisetti's alleged knowledge of confidential information related to the underlying technology in thirty-four of the accused products in the instant litigation. See Motion at 3–4; McMahon Decl. at 3.

## **LEGAL STANDARD**

A district court has the authority to exclude or admit expert witnesses "whose use at trial . . . would unfairly prejudice an opposing party."  Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980) (citing Clark v. Pennsylvania R.R. Co., 328 F.2d 591, 594–95 (2nd Cir. 1964)). "However, disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely."  Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004).  The Ninth Circuit has not established a bright line rule for analyzing whether an

---

complaint): Avid 4, Avid Trio, Axon M, Axon 7, Axon 7 mini, Axon Pro, Blade Force, Blade Spark, Blade Z Max, Blade X, Blade X Max, Blade Vantage, Blade V8 Pro, Blade Max 3, Blade Max 2s, Blade Max View, Citrine, Fanfare 3, Grand X 4, Jasper, Majesty Pro, Majesty Pro Plus, Maven 3, Maven 2, Max Blue, Max XL, Overture, Overture 3, Prelude+, Prestige 2, Primetime, Primetime Tablet, Tempo X, Trek 2, Trek 2 Tablet, ZMAX 2, ZMAX One, ZMAX Pro, ZFIVE G, ZFIVE 2, ZMAX Grand, ZMAX Champ, and Zpad 8 Tablet.  See Motion at Ex. K.

[4] Though cases 18cv1783-CAB-BLM, 18cv1784-CAB-BLM, 18cv1785-CAB-BLM, 18cv1786-CAB-BLM were consolidated for pretrial purposes (the lead case being 18cv1783-CAB-BLM), ZTEs' motion involves only ZTE and no other named defendants in the above related cases.

expert witness should be excluded, but several district courts have held that disqualification "is warranted based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." Id. at 1092–93; see also Wang Labs., Inc. v. Toshiba Corp., 762 F. Supp. 1246, 1248 (E.D. Va. 1991); Pellerin v. Honeywell Intern., Inc., 2012 WL 112539, at *2 (S.D. Cal. Jan. 12, 2012); English Feedlot, Inc. v. Norden Laboratories, Inc., 833 F. Supp. 1498 (D. Col. 1993). "[C]ourts should balance the competing policy objectives in determining expert disqualification." English Feedlot, Inc., 833 F. Supp. at 1504. Therefore, courts "should also consider prejudice to both parties and whether disqualification would promote the integrity of the legal process." Broadcom Corp. v. Emulex Corp., 2011 WL 11465478, at *1 (C.D. Cal. April 5, 2010) (citing Hewlett-Packard, F. Supp. 2d at 1093).

## DISCUSSION

### I. Consulting Agreement Prohibition

ZTEs' initial argument is that the terms of the Consulting Agreement prohibit Dr. Madisetti from serving as an expert for BNR in this Litigation. Motion at 2–4, Ex. B; McMahon Decl. at 2. BNR responds that this contract law argument is without merit because the Agreement is no longer valid, Dr. Madisetti's expertise in the current litigation would not involve products at issue in the InterDigital Matters, and ZTE waived their right to assert this argument by not objecting to Dr. Madisetti's involvement in another case. Oppo. at 21–24, Exs. 3–19; see also ECF No. 63-1, Declaration of Dr. Vijay Madisetti ("Madisetti Decl.") at 1–2. BNR argues that the Consulting Agreement "should be considered terminated" based on the Federal Circuit's affirmation of the ITC decision regarding the InterDigital ITC Investigation, and because "ZTE has presented no credible evidence that the stay in that matter will ever be lifted." Oppo. at 21, Exs. 3–19 (showing the Order staying the InterDigital District Litigation as well as several letters from InterDigital's counsel to the Judge in that case requesting extensions to the existing stay).

As noted above, the Consulting Agreement provides that it will terminate after the longest of three distinct time periods. Motion at 3, Ex. B. Though two years have passed from the

5

18cv1786-CAB(BLM)

effective date of the Agreement, the latter two time periods are not yet complete. First, Dr. Madisetti has not necessarily completed all work performed under the agreement, because the InterDigital District Litigation remains stayed, and there is a chance that more claims may arise. Motion at 3–4; McMahon Decl. at 4. Second, because the InterDigital District Litigation is currently stayed and not complete—meaning the requisite one-year period following the close of that case has not yet begun—the agreement remains in effect. See Motion at Ex. B. While BNR is correct that the InterDigital District Litigation has been stayed for a long time and that ZTE has advocated for the litigation to end, the fact remains that the litigation has not ended and therefore, the Consulting Agreement between ZTE and Dr. Madisetti remains in effect.

Section 8(d) prohibits Dr. Madisetti from working for any party in which ZTE is an adverse party. Motion at Ex. B. BNR does not dispute the applicability of this provision. Section 8(e) prohibits Dr. Madisetti from consulting for any other entity regarding any of ZTEs' products at issue in the InterDigital Matters. See id. BNR initially argues that this provision is inapplicable because the instant litigation involves different products than the InterDigital Matters. Oppo. at 6 (citing Motion at Ex. K), 12–14, Ex. 21. ZTE acknowledges this but explains that thirty-four of the products at issue in the instant litigation employ the same technology that is at issue in the InterDigital Matters, so when the stay is lifted, it is likely that the products identified in this case will be added to the InterDigital District Litigation. Motion at 6–7; McMahon Decl. at 3–4. Because the InterDigital District Litigation is stayed, not terminated, and based upon ZTEs' explanation and evidence, the Court finds that Section 8(e) is applicable to BNR's use of Dr. Madisetti in this case.

BNR's main argument is that ZTE waived both of these provisions when it did not object to Dr. Madisetti serving as an adverse expert witness in Maxell Ltd. V. ZTE USA, Inc., No. 5:16-cv-179 (E.D. Texas) ("Maxell"). Oppo. at 5, 9, Ex. 27. BNR alleges that in Maxell, "Dr. Madisetti testified against ZTE concerning the same products that BNR accuses of infringement." Oppo. at 10–11; Exs. 27, 28. ZTE argues that their decision to allow Dr. Madisetti to consult and testify in Maxell did not waive their ability to enforce the Consulting Agreement provisions in this case, because the technology at issue in Maxell is "completely different" than the technology at issue

in the InterDigital Matters. Reply at 4–5. ZTE asserts that the technology in Maxell "involved image processing (i.e., the operation of the camera on the accused device)," where the technology in the InterDigital Matters "involves wireless communications" and "compliance with 3GPP [and WCDMA] wireless standards (i.e., the wireless communication functionality of the accused device)." Reply at 5–6; see also Motion at Ex. E (Dr. Madisetti testifying that the technology at issue in Maxell involved "image processing"); McMahon Decl. at 2–4 (explaining that the technology Dr. Madisetti reviewed for the InterDigital Matters involved "wireless communication technologies"). Due to the allegedly different technology, ZTE argues that "there was no possibility of cross-contamination between the confidential ZTE information in the [InterDigital Matters] and the ZTE information produced in *Maxell* . . . ." Reply at 5; see also Motion at Ex. E; McMahon Decl. at 2–4. ZTE asserts that because none of the confidential information ZTE provided to Dr. Madisetti in the InterDigital Matters was relevant to any issue in Maxell, ZTE had an objectively reasonable expectation that the confidential information from the InterDigital Matters would remain confidential. See Reply at 5; see also Motion at Ex. E; McMahon Decl. at 2–4. Finally, ZTE argues that at most, it "may have waived objections to Dr. Madisetti being adverse to ZTE in future cases involving image processing technology." Reply at 7, Ex. E.

Case law is clear that "'waiver' means the intentional relinquishment or abandonment of a known right." Lynch v. California Coastal Com., 396 P.3d 1085, 1088 (Cal. 2017), reh'g denied (Aug. 9, 2017) (citations omitted). "'Waiver requires an existing right, the waiving party's knowledge of that right, and the party's 'actual intention to relinquish the right.'" Id. (quoting Bickel v. City of Piedmont, 946 P.2d 427, 434 (Cal. 1997), superseded by statute on other grounds in DeBerard Properties, Ltd. v. Lim, 976 P.2d 843, 849 (Cal. 1999)). The party claiming waiver bears the burden of proof by clear and convincing evidence. Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 636 (Cal. 1995), as modified on denial of reh'g (Oct. 26, 1995) (citing City of Ukiah v. Fones, 410 P.2d 369, 370–71 (Cal. 1962)); see also Crenshaw v. MONY Life Ins. Co., 318 F. Supp. 2d 1015, 1025 (S.D. Cal. 2004) (citing English Feedlot, 833 F. Supp. at 1501–1502) ("The party seeking disqualification 'bears the burden of proving confidentiality and non-

waiver.'").

To support its waiver argument, BNR asserts that Dr. Madisetti testified in Maxell about whether ZTEs' Axon 7 and Max Duo LTE—which are products also at issue in the instant case—infringed the '493 and '729 Patents[5] at issue in the Maxell case. Oppo. at 10–11, Exs. 27, 28. Specifically, BNR asserts that in determining whether the Axon 7 and Max Duo LTE infringed the '493 and '729 Patents, Dr. Madisetti reviewed "[a] lot," basing [his] analysis . . . on the patents themselves," review and experimentation with ZTEs' products, "product documents from ZTE describing its products," review of ZTEs' products' source code, "testimony . . . from ZTE's engineers," and ZTEs' discovery responses to Maxell. Oppo. at 11, Ex. 27.

While the Axon 7 and Max Duo LTE also are at issue in the current BNR litigation, Patents '493 and '729 are not. See Motion at Ex. K. In addition, BNR fails to show that Dr. Madisetti reviewed confidential information related to the Axon 7 and Max Duo LTE's wireless communication technology, which is the technology at issue in the InterDigital Matters and which allegedly overlaps with thirty-four of the accused products in the instant litigation. See McMahon Decl. at 3–4. Dr. Madisetti based his analysis in Maxell on "image processing camera patents," not patents involving wireless communication technology. See Oppo. at Ex. 27. Even if Dr. Madisetti reviewed the Axon 7 and Max Duo LTE, as well as documents, source code, discovery responses, and testimony related to those products, there is no evidence that Dr. Madisetti reviewed confidential information related to the Axon 7 and Max Duo LTE's wireless communication technology—the technology at issue in the InterDigital Matters. Furthermore, while BNR notes that other products at issue in Maxell also are at issue in the current BNR litigation, BNR again failed to show that Dr. Madisetti reviewed confidential information related to those products' wireless communication technology. See Oppo. at Ex. 27; Motion at Ex. K. Accordingly, BNR does not effectively rebut ZTEs' assertion that the technology at issue in the InterDigital Matters involves wireless communication technology, differing from the technology

---

[5] The U.S. Patent Numbers in their entirety for the '493 and '729 Patents were not provided by either party.

8

at issue in <u>Maxell</u>, which involved image and video processing. Motion at 4, Ex. E; <u>see also</u> Reply at 7; Oppo. at Ex. 27.

Furthermore, the Consulting Agreement provides that Dr. Madisetti shall provide consulting services to ZTEs' counsel involving the <u>InterDigital District Litigation</u>, the <u>InterDigital ITC Investigation</u>, "and/or other matters involving [the parties ZTE] and/or [InterDigital]." Motion at Ex. B. Because Dr. Madisetti is bound to consult for ZTE in the <u>InterDigital District Litigation</u> and the technology at issue in that case involves wireless communication technology—where the technology at issue in <u>Maxell</u> involved "image processing"—ZTE did not waive their right to enforce the confidentiality provisions of the Consulting Agreement as to the wireless communication technology at issue in the <u>InterDigital Matters</u>. Because the <u>InterDigital District Litigation</u> remains open (against ZTEs' preference), there is a substantial risk that the thirty-four products at issue in the current BNR litigation—products involving the same technology as those at issue in the <u>InterDigital Matters</u>—could be accused of infringement once the stay is lifted in the <u>InterDigital District Litigation</u>.

As a result, the Court finds that the Consulting Agreement remains in effect, that ZTE has not waived their ability to enforce Sections 8(d) and 8(e) in this case, and that the terms of the Consulting Agreement, including both Sections 8(d) and 8(e), prohibit Dr. Madisetti from serving as an expert for BNR in this litigation.

## II. Exclusion of Expert Witness

Even if the terms of the Consulting Agreement did not prohibit Dr. Madisetti's involvement in the instant litigation, the Court finds, for the reasons set forth below, that the relevant circumstances and considerations dictate that Dr. Madisetti should be excluded from serving as BNR's expert in this case.

### A. Whether ZTE and Dr. Madisetti Have a Confidential Relationship

"The first consideration is whether a confidential relationship existed between" ZTE and Dr. Madisetti, which "may be shown by the existence of a formal confidentiality agreement." <u>Broadcom Corp. v. Emulex Corp.</u>, 2010 WL 11465478, at *1 (C.D. Cal. April 5, 2010) (citing <u>Hewlett-Packard Co.</u>, 330 F. Supp. 2d at 1093). As discussed above, the Court finds that there

9

18cv1786-CAB(BLM)

is a confidential relationship between ZTE and Dr. Madisetti because the Consulting Agreement remains in effect. Broadcom Corp., 2010 WL 11465478, at *2 (holding that "[t]here c[ould] be little dispute" that a confidential relationship existed when the expert and moving party entered into a formal confidentiality agreement).

### B. Whether ZTE Disclosed Confidential Information to Dr. Madisetti that is Relevant to the Instant Litigation

"Confidential information is information which is 'of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege.'" In re Incretin Mimetics Prods. Liability Litigation, 2015 WL 1499167, at *2 (S.D. Cal. Apr. 1, 2015) (citing Hewlett-Packard, 330 F. Supp. 2d at 1093). Confidential information may also involve communications related to litigation strategy and the strengths and weaknesses of each side of the case. In re Incretin Mimetics, 2015 WL 1499167, at *2 (citing Hewlett-Packard, 330 F. Supp. 2d at 1094). However, "[u]nlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged." Hewlett-Packard, 330 F. Supp. 2d at 1094 (quoting Stencel v. Fairchild Corp., 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2000)). In addition, "[b]ecause the burden is on the party seeking to disqualify the expert, that party should point to specific and unambiguous disclosures that if revealed would prejudice the party." Hewlett-Packard, 330 F. Supp. 2d at 1094.

BNR argues that ZTE did not point to "any specific technical information previously disclosed to Dr. Madisetti" that is relevant to the instant litigation. Oppo. at 13 (citing ZTEs' Motion). BNR alleges that even if Dr. Madisetti has access to confidential information and attorney work product, "the types of information identified by ZTE have been rejected by other courts as a basis for disqualification under similar circumstances." Id. at 14. BNR argues that the technology at issue in the InterDigital Matters differ from that involved in the present action, and that ZTE cannot rely on speculation that the stay will be lifted on the InterDigital District Litigation. Id. at 17–20, Exs. 3–19, 27; see also Madisetti Decl. at 1–2 (stating that the technology in the InterDigital Matters "involved older 3G cellular technology," which is unrelated

to the 4G or LTE technology used in today's cellphone chips or the patents BNR asserted . . . ."). Finally, BNR argues that the parties' stipulated protective order in this case, see ECF Nos. 54 and 55, confine the prosecution bar to "the use of proximity sensors to reduce power and regulate battery life of cellular devices, Wi-Fi training sequences, Wi-Fi and cellular signal handoffs, cellular traffic congestion reduction and, Wi-Fi beamforming." Oppo. at 18, Exs. 29–30 (citing ECF No. 54-1).

ZTE responds by providing a declaration from defense counsel, Charles McMahon,[6] who states that in connection with the InterDigital Matters Dr. Madisetti (1) investigated several ZTE devices for infringement, (2) analyzed confidential information regarding ZTEs' wireless communication technologies, (3) discussed confidential information and litigation strategy with ZTEs' counsel, and (4) "testified at deposition and at trial on behalf of" ZTE regarding the design, operation, and non-infringement of the accused cellular devices. Motion at 6–7; see also McMahon Decl. at 2–3. Mr. McMahon declares that "[o]nce the stay is lifted in the [InterDigital District Litigation], [he] expect[s] that InterDigital may accuse . . . thirty-four [of the] products" BNR accuses of infringement, because those products are compatible with WCDMA networks, "thus implicating them in the" InterDigital District Litigation. McMahon Decl. at 3–4. ZTE asserts that it has no way to monitor the discussions between BNR and Dr. Madisetti if Dr. Madisetti is to serve as BNR's expert, including whether Dr. Madisetti will provide BNR with confidential information that originated from the InterDigital Matters. Motion at 9; see also McMahon Decl. at 4 (explaining that by providing Dr. Madisetti with confidential information and strategy relating to the thirty-four products accused of infringement by BNR," Dr. Madisetti "could then provide, even if only inadvertently," information to BNR that could be used against ZTE in the instant litigation).

Contrary to BNR's allegations, the Court finds that ZTE provides specific examples of the types of confidential information Dr. Madisetti has access to based on the InterDigital Matters.

---

[6] Attorney Charles McMahon is lead counsel for ZTE in the instant litigation and the InterDigital District Litigation, and he represented ZTE in the InterDigital ITC Investigation. McMahon Decl. at 2.

For example, ZTE explains that "[t]hirty-four cellular products accused of infringement by BNR in this case are compatible with WCDMA networks . . . and are implicated in the pending *InterDigital* Litigation." Id. at 7; see also McMahon Decl. at 3. It is ZTEs' position that "[o]nce the stay is lifted in the [InterDigital District Litigation], those thirty-four cellular products will likely be accused of infringement by InterDigital based on their compatibility with WCDMA networks." Motion at 7; McMahon Decl. at 4. ZTE also states that the twelve products previously analyzed by Dr. Madisetti in the InterDigital Matters and the thirty-four newer cellular products implicate WCDMA network technology, which creates significant overlap in the supporting evidence and non-infringement arguments. Motion at 7; McMahon Decl. at 4. Finally, Mr. McMahon declares that if the stay is lifted in the InterDigital District Litigation, as with the InterDigital ITC Investigation, "ZTE will have to provide Dr. Madisetti with confidential information about . . . products that overlap with the current *BNR* . . . litigation," including "alleged compliance with specific provisions of the wireless communication standards," as well as litigation strategy and the strengths and weaknesses of the case. McMahon Decl. at 4.

The information Dr. Madisetti has access to from the InterDigital Matters constitutes confidential information[7] because it includes information within the scope of attorney-client privilege or the attorney work product doctrine, and information that involves litigation strategies, strengths, and weaknesses. See, e.g., Pellerin, 2012 WL 112539, at *3 (finding the expert had access to confidential information based on the moving party's testimony that the expert had "confidential information pertinent to the litigation at issue."); Alien Technology Corp., 2007 WL 4261972, at *2 (holding that confidential and privileged information was disclosed when the expert "was knowledgeable of [the party's] product line, its future strategies, and its legal and intellectual planning."); In re Incretin Mimetics Products Liability Litigation, 2015 WL 1499167, at *6–7 (explaining that among other things, private conversations and

---

[7] The information Dr. Madisetti has access to is also confidential information as defined by the Consulting Agreement given that Dr. Madisetti's "evaluations and services," as well as defense counsel's "strategies and analysis" were (among other information) confidential pursuant to Section 8(a) of the Agreement. Motion at Ex. B.

discussions as well as knowledge privy to the moving party's strategy, amounted to confidential information); Oracle Corp. v. DrugLogic, Inc., 2012 WL 2244305, at *7 (N.D. Cal. June 15, 2012) (explaining that though the parties' characterizations of the expert's activities "dramatically differ[ed]," the court found disclosure of confidential information where "the record as a whole support[ed] [the moving party's contention] that [the expert] had access to confidential information about the accused technology" based in part on a corporate executive's declaration that such confidential information was disclosed); Broadcom Corp., 2010 WL 11465478, at *3 (holding that the moving party "need not show that [the expert] received direct information about its current litigation strategy;" instead, "[t]he critical question . . . is whether [the expert] received confidential information 'that is relevant' to the current patent litigation . . . .").

In addition to being confidential, the information Dr. Madisetti has access to in the InterDigital Matters must be relevant to the current BNR litigation. Hewlett-Packard, 330 F. Supp. 2d at 1093. While BNR argues that the WCDMA (among other) technology is older than the technology at issue in the present litigation, ZTE is correct in their assertion that the relevant inquiry is whether Dr. Madisetti has access to confidential information that is relevant to the present case. Reply at 10; Oppo. at 17, Ex. 28; Madisetti Decl. at 1–2; see also Pellerin, 2012 WL 112539, at *1–3 (finding the second prong of the expert disqualification test was met when an expert received confidential information that was pertinent to the litigation). In the current litigation, Dr. Madisetti may need to analyze whether ZTEs' products comply with various wireless standards (old or new) using the same underlying confidential information. Because both the InterDigital Matters and the current BNR litigation relate to wireless communication technology and because the InterDigital District Litigation remains ongoing, the confidential information Dr. Madisetti has access to overlaps with the current litigation. Finally, BNR's prosecution bar argument is not persuasive because the scope of the prosecution bar does not dictate whether the confidential information previously provided to Dr. Madisetti is relevant to the instant BNR litigation.

After careful consideration of the parties' arguments and evidence, the Court finds that the confidential information provided to Dr. Madisetti in the InterDigital Matters is relevant to

the technology, products, and patents at issue in the instant case. Even though the <u>InterDigital District Litigation</u> has been stayed for a long time, the fact that it has not been terminated and may be reopened creates a substantial risk that Dr. Madisetti would be required to separate the confidential information he receives from BNR and ZTE, while attempting to serve both parties on related technology and overlapping products. The Court cannot allow an expert to attempt to divide his loyalties in this way. See, e.g., <u>Erickson v. Newmar Corp.</u>, 87 F.3d 298, 303 (9th Cir. 1996) ("Quite simply, this court chooses to abide by the ageless wisdom that a person cannot serve two masters."); <u>Pellerin</u>, 2012 WL 112539, at *3 ("This Court concurs . . . that the human brain does not compartmentalize information" in a manner that would reduce the substantial risk of inadvertent disclosure of confidential information); <u>Oracle Corp.</u>, 2012 WL 22244305, at *7 (holding that in light of the expert's "possession of confidential information that [wa]s directly relevant to the claims in t[he <u>Oracle Corp.</u>] case," the expert's involvement in the matter as to certain questions "pose[d] a substantial risk that various confidentiality obligations" would be breached); <u>Alien Technology Corp. v. Intermec, Inc.</u>, 2007 WL 4261972, at *2 (D. N.D. Nov. 30, 2017) (explaining that while the expert may not have thought the knowledge he gained would be relevant to the current litigation, "the danger [wa]s that no one [would] know how the information he learned . . . [could] affect his opinion" and that ultimately, he could inadvertently use confidential information). Accordingly, the Court finds that ZTE has met their burden of proof as to both prongs of the two-part expert disqualification test.

### III.   Policy Considerations

In determining whether to disqualify an expert, courts examine the prejudice to both parties in the event of disqualification, as well as whether disqualification upholds the integrity of the legal process. See <u>In re Incretin Mimetics</u>, 2015 WL 1499167, at *2.

#### A. Prejudice to the Parties

ZTE argues that it would be prejudiced by Dr. Madisetti serving as BNR's expert because ZTE would be left to choose between two equally undesirable outcomes. Motion at 10; <u>see also</u> McMahon Decl. at 4–5. First, if ZTE continues to work with Dr. Madisetti in the <u>InterDigital District Litigation</u>, ZTE may need to disclose confidential information and litigation strategies

related to the thirty-four products accused of infringement in the current BNR litigation, which would allow BNR to "rely on Dr. Madisetti's use of confidential information against ZTE, even though that information was and is to be used only for ZTEs' benefit." Motion at 10; McMahon Decl. at 4. Second, if ZTE terminates the Consulting Agreement with Dr. Madisetti, it would be both burdensome and expensive to educate "a new expert on products which Dr. Madisetti already investigated on behalf of ZTE." Motion at 10; McMahon Decl. at 4–5. ZTE argues that given the early stage of litigation in the instant case, BNR remains free to obtain one of the "many experts in wireless communications." Motion at 11. While BNR presents policy arguments as to why Dr. Madisetti should not be excluded, BNR has not established how it would be prejudiced by the exclusion beyond the need to obtain a new expert. See Oppo. at 21–24; see also Pellerin, 2012 WL 112539, at *3 (excluding an expert witness when the party opposing exclusion made no showing of how it would be prejudiced). Accordingly, given the early stage of this litigation, the recency of the expert relationship between BNR and Dr. Madisetti, and the lack of evidence by BNR suggesting it would incur more than minimal prejudice, the issue of prejudice weighs in favor of excluding Dr. Madisetti as BNR's expert.

### B. Integrity of the Legal Process

BNR argues that "[i]f experts are too easily disqualified, unscrupulous attorneys may attempt to create relationships with numerous potential experts at a nominal fee hoping to preempt the ability of their adversaries to obtain expert assistance . . . ." Oppo. at 20 (citing English Feedlot, 833 F. Supp. at 1502). BNR argues that excluding Dr. Madisetti as an expert will incentivize ZTE "to continue agreeing to litigation stays to tie up experts and prevent them from testifying." Oppo. at 21. BNR further alleges that "[p]olicy considerations favor permitting Dr. Madisetti to serve as BNR's expert given (1) the number of years that have elapsed; (2) the unlikelihood that any InterDigital District Litigation will be litigated; and (3) ZTEs' failure to object to Dr. Madisetti serving as an expert witness in *Maxell*." Oppo. at 21, Ex. 27. BNR also argues that the "*InterDigital* District Litigation has *de facto* concluded," that "the [Consulting] Agreement should be considered terminated," and that "ZTE should not be permitted to selectively enforce provisions [within the Consulting Agreement] to gain a tactical advantage."

Oppo. at 21–22.

ZTE argues that experts should be held to confidentiality agreements to support the integrity of the legal process and disincentivize the potential for experts to sell their opinions to the highest bidder. Motion at 11. ZTE further argues that it does not intend to hold up the InterDigital District Litigation in order to tie up Dr. Madisetti as an expert, and that this is evidenced by ZTE not objecting to Dr. Madisetti testifying adversely as to "technology unrelated to wireless communications" in Maxell. Reply at 13; Motion at Ex. E.

The Court agrees with ZTEs' argument. BNR has not presented any evidence that ZTE is improperly attempting to "tie up" Dr. Madisetti and prevent him from testifying or improperly creating relationships with numerous potential experts. In fact, the evidence shows the opposite—ZTE advocated for the termination of the InterDigital District Litigation and allowed Dr. Madisetti to testify against them in litigation that involved unrelated confidential information. See Motion at Ex. E; Oppo. at Exs. 6–19, 27. As such, this consideration also weighs in favor of excluding Dr. Madisetti as BNR's expert.

**CONCLUSION**

The Consulting Agreement remains in effect and prohibits Dr. Madisetti from serving as an expert for BNR in this litigation. In addition, ZTE and Dr. Madisetti have a continuing confidential relationship, and through that confidential relationship, confidential information was disclosed to Dr. Madisetti that is relevant to the instant litigation. The relevant policy considerations weigh in favor of disqualification in light of the potential prejudice to ZTE and because the instant case is in the early stages of litigation. Accordingly, ZTEs' motion for a protective order to exclude Dr. Madisetti as an expert for BNR is **GRANTED**.

**IT IS SO ORDERED**.

Dated: 4/12/2019

Hon. Barbara L. Major
United States Magistrate Judge